STATE OF IOWA, Appellee, v. A. MANIGAN, Appellant.

**Criminal law:** FLIGHT: EVIDENCE: INSTRUCTION. Where the evidence 1 simply showed that defendant when arrested was found in a shanty belonging to another at the place where he had formerly worked, and that the door was locked by the owner of the shanty, it was insufficient to warrant an instruction that if defendant fled and concealed himself such evidence of flight could be considered as *prima facie* evidence of consciousness of guilt.

**Same:** EVIDENCE: EXAMINATION OF WITNESSES: LEADING QUESTIONS. 2 Where a defendant seeks to negative evidence of the state by testimony directly responsive thereto, counsel may direct the attention of the witness to the very statements proposed to be negatived, and the examination will not be considered as leading and suggestive.

**Same:** MURDER: PREMEDITATION: EVIDENCE. Where defendant was 3 charged with murder, which includes the element of premeditation, he was entitled to have any purpose for which he was carrying a deadly weapon, consistent with the absence of premeditation, considered by the jury. Thus in support of the claim that the shooting of deceased was accidental, and in response to evidence by the state that he had threatened to shoot deceased, and that he had carried his pistol during all of the day previous, and he had stated on cross-examination that he did not always carry his pistol, he should have been permitted to state why he was carrying it at the time in question.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

Saturday, March 14, 1914.

The defendant was prosecuted under an indictment for murder in the first degree. There was a verdict of guilty as charged, and a judgment thereon fixing the penalty at life imprisonment. The defendant appeals.—*Reversed* and *Remanded.*

*J. B. Rush* and *J. F. Conrad,* for appellant.

*George Cosson,* Attorney General, for the State.

Evans, J.—The defendant was charged with the murder of his wife on the night of February 24, 1913, at their home in Des Moines. It is undisputed that the defendant's wife died from septic poisoning resulting from a gunshot wound at the knee, and that the injury was inflicted by the defendant. The claim of the defendant is that the shooting was purely accidental, and there is much in the circumstances to support this claim. The defendant is a colored laborer, and manifestly belongs to that lower stratum of the colored race to whom freedom has not proved uplifting, but, on the contrary, has been a wide-open door to dissipation. Of the same class are the witnesses who testified to the circumstances preceding the shooting. It is a circumstance against the defendant that these witnesses were his companions, and they were without apparent motive of hostility to him. There is, however, considerable inconsistency and self-contradiction in their testimony on behalf of the state. The defendant is a coal miner who had been out of work for several months prior to the time of the shooting by reason of some disability. He was suffering from an injured eye, and also was carrying his arm in a sling. The shooting occurred about 2 o'clock in the morning; the defendant arriving home at that time. His own story is that he was undressing, and was having difficulty in removing his shirt because of his lame arm, and that his wife

was assisting him, that he pulled the revolver out of his hip pocket to put it away, and that it was in some manner discharged, as he supposed, at the moment, into the floor. The ball, however, penetrated the leg of the wife, passing in a little above the knee, and passing out three or four inches below the knee. It is undisputed that defendant declared the shooting an accident at the time, and manifested sorrow over it. It appears, also, from the testimony for the state that the shooting occurred while the defendant was in the act of undressing, and after his shirt had been partially removed. The damaging testimony against him was to the effect that he had been in the house earlier in the evening, and had quarreled with his wife, and that he had gone out after threatening to get his "gun," and to shoot her.

I. Counsel for defendant urge that the evidence was wholly insufficient to sustain a verdict for first degree murder. They also urge that the defendant was unduly restricted by

1. CRIMINAL LAW: the trial court in the admission of testimony
flight: evidence: instruc- in his behalf, and, further, that the trial court
tion. erred in the giving of certain instructions.

We will direct our first attention to instruction 11½, which was as follows: "If you shall find from the testimony in this case that after the assault, if any, was committed by the said defendant upon the said Mrs. A. Manigan, that the said defendant fled, and concealed himself, such evidence of flight may be considered by you as *prima facie* evidence of a consciousness of guilt."

The complaint is that there was nothing in the record to justify the giving of this instruction. It is undisputed that the defendant was first arrested for the assault immediately after the shooting on the same night, and that he gave bail. The particular circumstances of that arrest are not in evidence. A month later, and after the death of the wife, the grand jury returned an indictment, and a warrant was issued thereunder. The arrest of the defendant under this warrant was made by Deputy Sheriff Sunberg. If there was evidence

to justify the instruction above quoted, it must be found in the testimony of Sunberg, which was as follows: "I arrested Bud out at Norwoodville, northeast of the city four or five miles. He was in a little shanty that was locked by a padlock. We knocked on the door, and Manigan answered, and asked who was there. I told him, and he opened the door. Manigan said a man by the name of Baker batched there, and had locked the door before he went to work."

The foregoing from appellant's abstract is amended in appellee's abstract by adding as follows: "We stood around there awhile, and heard a little noise in there, and this colored gentleman that was with us rapped on the door, and Manigan answered and asked who was there, and he told his name to him. Told him to open the door, and Manigan stuck the key from under the door outside, the padlock key, and he opened the door."

It appears that the Norwoodville Coal Company was the defendant's last employer. The time of day or night when the arrest was made does not appear. It does not even appear that the defendant knew of the indictment. Not a circumstance is shown other than above set forth tending to show flight or concealment. The defendant was out on bail under the first arrest, and was in no manner defaulted. The mere fact that the defendant was in a house in the vicinity of a coal mine where he had worked when he worked at all has in it no suggestion of flight or concealment, nor did the fact that the door was locked of itself prove anything in that direction. The lock is the universal protection even of the occupant of the "hut" against the petty thievery that would despoil him of what little he had. The fact that the house was a "shanty" adds nothing to the force of the circumstance. It was in keeping with defendant's station in life. In this case the shanty belonged to another occupant, and its door was locked by him. We think, therefore, that this evidence was wholly insufficient to permit the jury to consider it as "prima facie evidence of guilt."

II. As heretofore indicated, the witnesses for the state testified that earlier in the evening, and a few hours prior to the shooting, the defendant had threatened to get his gun, and to shoot his wife. They also testified that one of the persons present at the time of such threat was Alice Pitman. This person was called as a witness for the defense, and an attempt was made to show by her that she heard no such threat. The following question was put to her: "Did you hear him say anything about going to get a gun?" On objection by the state the trial court ruled out the question, on the ground that it was "leading and suggestive." The question was directly responsive to the testimony introduced by the state. It was directed to specific affirmative testimony given on behalf of the state. It was the right of the defendant to negative such testimony. For that purpose the counsel of defendant had a right to direct the attention of the witness to the very statements proposed to be negatived. The question put in the case before us was in conformity with the rule, and was not leading. There was therefore error in the ruling. We would not, however, feel justified in reversing on this ground. Large discretion is vested in the trial court as to the form of questions, and it is the duty of counsel to adapt themselves as far as possible in good faith to the ruling of the trial court as to the form of a question, and to use reasonable diligence to elicit the proposed testimony by other questions conforming to the views of the court. This does not mean, however, that the defendant was bound to make the witness his own as to any fact except the particular fact inquired about.

2. SAME: evidence: examination of witnesses: leading questions.

Counsel for defendant abandoned the attempt to elicit the testimony upon the single adverse ruling of the court, and the record gives us little assurance, if any, that, if the witness had been permitted to answer the question put, she would have negatived the testimony on behalf of the state.

III. The defendant testified, not only that he made no threats against his wife when at home earlier in the evening,

but that in fact he had his pistol in his pocket at that time,
and had had the same in his pocket all day.

3. SAME: murder: premeditation: evidence. On cross-examination he testified that he did
not always carry the gun.  He attempted, also,
to explain why he was carrying it at the time.  This explana-
tion was stopped and ruled out on objection by the state; no
ground being specified.  On redirect examination he was asked
by his counsel to explain his reason for carrying the gun.
Objection to this line of evidence was sustained as being in-
competent, irrelevant, and immaterial.  The ruling was
erroneous.  The charge of murder in the first degree included
the element of premeditation.  In order to render the verdict
in this case, the jury must have found premeditation.  The
question of preparation for the deed inhered in this element.
The evidence on behalf of the state tended to show premedita-
tion and preparation.  It was not only competent and material
but highly important to the defendant to negative such testi-
mony and the inferences which might arise therefrom.  If he
had a reason for carrying the revolver which was consistent
with his innocence, or consistent with the absence of premedi-
tation or preparation for an assault upon his wife, it was his
right to have it submitted to the consideration of the jury.

For the reasons indicated, the judgment of conviction
must be reversed, and the case remanded for another trial.

In view of our grave doubt of the sufficiency of the
evidence to justify a verdict for first degree murder, we are
not averse to granting a new trial upon the errors indicated.
The defendant is not a valuable member of society.  The ver-
dict doubtless drew no tear from any eye save his own.  He
would doubtless fare as well in the penitentiary, and perhaps
better, than in any place he may ever make for himself.  But
his right to a fair trial is no less sacred than that of the man
of substance and of friends.—*Reversed* and *Remanded*.

LADD, C. J., and WEAVER and PRESTON, JJ., concur.