# STATE v. HARRY COOK.[1]

May 29, 1942.

No. 33,009.

*Attell P. Felix* and *A. Gordon Rosenmeier,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Special Assistant Attorney General, and *Austin L. Grimes,* County Attorney, for the State.

[1]Reported in 4 N. W. (2d) 323.

HOLT, JUSTICE.

The information charged defendant with having, on May 25, 1940, operated and driven his Buick coupé in a reckless and grossly negligent manner against Martin Kurtzahn, on highway No. 371, in Morrison county, causing his death. (Mason St. 1940 Supp. § 2720-175.) He was convicted and sentenced. He appeals from the conviction and from the order denying a new trial.

Defendant does not contend on this appeal that the evidence does not sustain the conviction; but does claim that the court erred in refusing to give certain requested instructions, and also erred in refusing to grant a new trial for misconduct of the county attorney in his final argument to the jury.

Before considering these assignments of error it is necessary to recite some of the pertinent evidence. Trunk highway No. 371 runs northerly through Little Falls to Brainerd. Its roadway is cement, 18 feet wide. About six miles northerly from Little Falls a black tarvia road from Camp Ripley, about a mile to the west, joins No. 371. On and prior to May 25, 1940, defendant was employed at Camp Ripley, but stayed and took his meals at Little Falls, traveling between the two places by means of his Buick coupé. After eating his noon lunch at Little Falls on the day mentioned, he bought a bottle containing three-quarters of a pint of rum and drove to Camp Ripley. He arrived at Smith's store, outside the gate to the camp, about one o'clock, entered the store and ordered Coca-Cola to mix with the rum, and undertook to draw plans for a house he intended to build. He stayed in the store until about three o'clock and had, he said, four drinks of rum. Then he went to the room of one Tourney in the camp, where he and Tourney each had two bottles of beer. About seven o'clock he was back in Smith's store, where, he says, he drank two bottles of beer, and left in his Buick around a quarter before nine o'clock for Little Falls. When about three miles north thereof, he overtook and struck Martin Kurtzahn, riding his bicycle. The projecting ornament on the radiator cap was found by the under-

taker imbedded more than two inches in the small of the back of Kurtzahn. Defendant applied the brakes the moment of the collision, but the car skidded and stopped in the ditch on the east side of the pavement.

At about the same time that defendant, driving from Smith's store, approached the junction with No. 371, one Lindstaedt and his brother-in-law, Allen Dee, in a Buick coupé, came from the north on No. 371. Both cars applied brakes to avoid collision. Defendant restarted first. Lindstaedt and Dee testified that they got under way within half a minute and attempted to overtake defendant in order to obtain his license number, but could not do so, although they speeded up to over 70 miles an hour. They testified that they came to the place of the accident, saw Kurtzahn's wrecked bicycle near the center line of the pavement, but did not notice the body nearby; that the brakes were applied and their car came to a stop opposite the place where defendant's car was in the ditch, and that they saw him sitting therein with his arms on the steering wheel; that young Brutcher, who had witnessed the collision from his father's farmyard, ran up and told them to hurry to Little Falls and send back an ambulance, that defendant was drunk. Lindstaedt immediately drove to Little Falls and gave notice, and soon the ambulance, the sheriff, and highway patrolmen were at the scene of accident.

Martin Kurtzahn, with his companion, 16-year-old Jerome Jarvis, when struck by defendant's car, were traveling southerly towards Little Falls, each riding a bicycle. Martin and his bicycle lay together near the center line of the pavement. Jerome and his bicycle were in the ditch west of the pavement about 200 feet northerly from the spot where Martin's body and bicycle were found. No other conclusion can be reached than that Martin's body and bicycle were caught and held on defendant's car while it traveled 200 feet.

As stated, defendant testified that he struck Martin Kurtzahn. A part of his car was found in Kurtzahn's body. So there can be no doubt that defendant's driving caused a mortal injury to

Kurtzahn. But the theory of defense was that the fatal blow came from Lindstaedt's car while Kurtzahn was still alive. 1 Wharton, Criminal Law (12 ed.) 260. So defendant requested instructions Nos. 5 and 5½ be given. The refusal is assigned as error. No. 5 reads:

"Before you can bring in a verdict of guilty you must be satisfied beyond a reasonable doubt that it was the reckless or grossly negligent manner of defendant's driving of his car that caused Martin Kurtzahn's death. If there was another car which also struck him—even though such striking was after defendant's car struck him—and at the instant of the impact by the other car Martin Kurtzahn was still living, notwithstanding he may have been in such condition he was mortally wounded and would die in a very short time; if the impact of the second car was sufficient to cause his death, or if you are not satisfied beyond a reasonable doubt this was not true, you must bring in a verdict of not guilty."

Requested instruction No. 5½ reads:

"Before you can bring in a verdict of guilty you must be satisfied beyond a reasonable doubt that it was the defendant's car and none other that caused the mortal wound on Martin Kurtzahn which resulted in his death."

The first sentence of No. 5 was repeatedly given in substance in the general charge and so was No. 5½. With respect to the balance of No. 5, we think the court rightly refused to give it. Unless there is evidence of facts, or of circumstances from which facts may be inferred, to which the requested instruction of law is applicable, it should not be given. There was no direct evidence that Lindstaedt's car touched Kurtzahn's body or bicycle. Nor is there evidence of circumstances from which the jury could infer that that car or any other vehicle contacted either the body or the bicycle. It is true, the state's witnesses were not always consistent, nor did they agree as to details. But this is not

strange. It was night. They did not come to the place of accident at the same moment or from the same direction. They may not have been attracted to the same phase of the situation. But with all this, there is no evidence from which the jury could infer that Lindstaedt's, or any car other than Cook's, dealt a fatal blow to Martin Kurtzahn.

The substance of the requested instruction No. 6 was fully covered in apt language in the general charge.

Instruction No. 7 reads: "Even though defendant was driving negligently, unless you are satisfied beyond a reasonable doubt the accident was not unavoidable, you must bring in a verdict of not guilty." We think this instruction imposed a greater burden on the state than the law requires.

One ground assigned in the motion for a new trial was misconduct of the county attorney in the final argument to the jury. While the settled case contains the argument, it also shows that no objection was taken thereto when made, nor was any part thereof excepted to before the jury retired or before sentence was pronounced. State v. Geary, 184 Minn. 387, 239 N. W. 158; State v. Palmer, 206 Minn. 185, 288 N. W. 160, and the decisions therein referred to determine that defendant is not entitled to now raise the question of misconduct. Besides, the evidence of defendant's guilt is so convincing that there should be no new trial unless some constitutional rights of his have been violated. We must state, however, that the following lines in the closing paragraph of the county attorney's address should not have been uttered:

"I have been county attorney for this county now for—this is my tenth year. During that time I have probably handled some 2,000 cases. I have never yet had a case where so much evidence came in, direct evidence, circumstantial evidence, and so many alibis, and I must say in frankness that I have never had such a strong case of the violation of a law."

Assertions of that sort are wholly improper. They are not arguments. Such statements from a county attorney have been

repeatedly condemned. State v. Geary and State v. Palmer, *supra*. The judgment and order are affirmed.