**STATE of Minnesota, Respondent,**

**v.**

**Lovell Nahmor OATES, Appellant.**

**No. C9–99–1533.**

Court of Appeals of Minnesota.

June 20, 2000.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Beverly J. Benson, Assistant County Attorney, Minneapolis, MN (for respondent).

Michael C. Davis, St. Paul, MN (for appellant).

Considered and decided by TOUSSAINT, Chief Judge, SCHUMACHER and SHUMAKER, Judges.

## OPINION

SCHUMACHER, Judge

This appeal is from a judgment of conviction and sentence for second-degree murder and four counts of second-degree assault. *See* Minn.Stat. §§ 609.19, subd. 1(1), 609.222, subd. 2 (1998). Appellant Lovell Oates was sentenced to an aggregate prison term of 378 months. We affirm.

## FACTS

Appellant Lovell Nahmor Oates was indicted on charges of first-degree murder, attempted first-degree murder, and four counts of second-degree assault for a September 21, 1998, shooting incident at the South Beach night club in downtown Minneapolis. Ragan Durrenberger, a South Beach patron, died of a gunshot wound to

the head. Justin Vasser and Diamond Porter, two other patrons, suffered gunshot wounds. The state alleged that the three victims were struck after Oates pulled a gun on Ricky Fuller, the intended victim, and Fuller struggled with Oates for the weapon.

The state sought to introduce evidence of six prior incidents involving Oates, three of which also involved Ricky Fuller, that occurred in or just outside various Minneapolis night clubs. The state argued that the three 1995 incidents involving Fuller were admissible to show the relationship between Oates and Fuller. The trial court ruled that the 1995 incidents, an escalating series of encounters in which Fuller mediated a fight involving Oates, then fought with Oates, and lastly was struck by a bullet fired by a man who looked like Oates, were admissible, without the need for a Spreigl analysis.

The trial court also ruled that the state could present, as Spreigl evidence, a 1997 drive-by shooting outside a night club. The court, however, excluded Spreigl evidence of two 1998 incidents at the South Beach night club.

Justin Vasser testified that he went to the South Beach night club with Ricky Fuller the night of the shooting. Vasser testified, over defense objection, that there was "bad blood" between Fuller and Oates. Vasser and Fuller were standing together when Vasser felt a scuffle and saw someone coming at Fuller with a gun. Vasser described the man as wearing a silky Versace paisley shirt. He testified that Fuller wrestled the man for the gun, and he heard a shot. After a pause, he heard more shots coming from around the dance floor that appeared to be fired by the same man, wearing the same shirt, with his hair in French braids.

The state presented the testimony of several eyewitnesses to the shooting, including four South Beach employees who chased after the fleeing gunman. Almost all of the eyewitnesses described the gunman as wearing a brightly-colored, "Versace-style," patterned silk or satin shirt. Several of the eyewitnesses described his hair as being in French braids or "corn rows." Two of the eyewitnesses positively identified Oates as the gunman in a photo lineup. Another eyewitness picked out two photographs, one of them Oates's photo, from the photo lineup.

Ricky Fuller testified that he saw Oates at the South Beach night club on the night of the shooting. He testified he did not get a look at the face of the man who drew the gun on him. Fuller testified about the three 1995 incidents. He admitted on cross-examination that neither of the first two incidents was a "big deal" and that he was not 100% sure of his identification of Oates as the gunman in the third incident. But he testified that he recognized Oates's car as the vehicle from which the shot was fired.

The state presented the testimony of a forensic firearms examiner who identified the cartridges and bullet fragments found at the scene, as well as one live bullet, as PMC brand 9 mm ammunition. Police officers executed a search warrant at Oates's residence three days after the shooting. They found several patterned, brightly-colored shirts matching the eyewitnesses' description. They also found an empty box for a 9 mm gun, as well as a holster, and several boxes of PMC brand 9 mm ammunition.

Oates presented testimony that he was seen at a concert the evening of the shooting and was wearing a suit, along with a solid-colored shirt unlike the shirt described by eyewitnesses. The jury acquitted Oates of first-degree murder, but found him guilty of second-degree murder for the death of Ragan Durrenberger, and of second-degree assault against Justin Vasser, Diamond Porter, Ricky Fuller, and Mohammad Kafi, one of the South Beach employees.

The trial court sentenced Oates to 306 months for the second-degree murder, concurrent 36–month sentences for the

second-degree assaults committed against Vassar and Porter, and consecutive 36–month sentences for the second-degree assaults against Fuller and Kafi.

## ISSUE

1. Did the trial court abuse its discretion in instructing the jury on evidence of flight?

2. Did the court abuse its discretion in allowing Spreigl and "relationship" evidence?

3. Is the evidence sufficient to support the convictions?

4. Did the trial court err in imposing multiple sentences?

## ANALYSIS

1. Oates argues that the trial court abused its discretion in instructing the jury on the inference that can be drawn from evidence of flight. Trial courts are allowed "considerable latitude" in the selection of language for jury instructions. *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990) (quoting *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986)). In reviewing a claim of error in instructing the jury, a reviewing court will generally not reverse absent an abuse of discretion. *See State v. Persitz*, 518 N.W.2d 843, 848 (Minn.1994) (discussing refusal to give instruction requested by defense).

The trial court instructed the jury, over a defense objection, as follows:

Evidence of flight – of the flight of the defendant prior to his arrest is a factor that may be considered by you as evidence of the consciousness of guilt.

Oates argues that the evidence did not support any instruction on evidence of flight and that, in any event, the trial court's instruction materially misstated the law.

The state presented two types of "flight" evidence: (1) evidence that Oates was identified as the gunman (or presumed gunman) fleeing on foot from the South Beach night club and then fleeing in a car described by eyewitnesses; and (2) evidence that Oates took a cab from his home more than two hours later and was arrested in Chicago a month after the shooting.

Evidence of flight from the scene of a crime is evidence intimately connected to the crime itself. *See State v. Mosby*, 450 N.W.2d 629, 632–33 (Minn.App.1990) (holding that evidence defendant attempted to steal a car in which to flee was evidence admissible as part of the proof of the offense, not Spreigl evidence), *review denied* (Minn. Mar. 16, 1990). Evidence that Oates was identified fleeing from the South Beach night club, as well as descriptions of the fleeing gunman as someone similar in appearance, tended to prove Oates's guilt directly, as evidence of identity, not indirectly, through an inference of "consciousness of guilt." There is no need to instruct the jury that a suspected gunman fleeing the scene is displaying a "consciousness of guilt."

The second type of "flight" evidence—Oates's cab ride and his arrest in Chicago—had only a slight tendency to prove consciousness of guilt and did not warrant a "flight" instruction. A taxi driver testified he picked up a man he was "60 to 70% [sure]" was Oates two hours after the shooting and drove him to another south Minneapolis location. But there was no evidence as to the significance of that location and no evidence linking this local "flight" with Oates's eventual arrest in Chicago one month later. Nor was there evidence of how long Oates had been in Chicago, how he got there, or any other circumstance tending to connect that trip to the South Beach shooting.

The supreme court has discouraged trial courts from giving instructions on particular kinds of evidence, especially with respect to inferences. *State v. Olson*, 482 N.W.2d 212, 215 (Minn.1992); *see State v. Starfield*, 481 N.W.2d 834, 839 (Minn.1992) (stating that instructions "drawing attention to particular kinds of evidence" gener-

ally should be avoided). The trial court's instruction drew attention to the "flight" evidence and may have implied that the jury should credit the state's theory that Oates did in fact flee to Chicago after the shooting.

There is only limited support in Minnesota for giving an instruction on evidence of flight. *See State v. McLaughlin*, 250 Minn. 309, 319, 323–24, 84 N.W.2d 664, 671–72, 674 (1957) (holding that when there is sufficient evidence of flight court may give a qualified instruction allowing inference of guilty); *cf. State v. Smith*, 299 N.W.2d 504, 506 (Minn.1980) (holding that defendant waived issue by failing to object but noting disagreement of courts and commentators on issue). We conclude that it was error to give the "flight" instruction in this case given the minimal evidence of flight. Therefore, we do not address Oates's argument that the instruction given misstated the law.

■ An error in instructing the jury is harmless if it can be said beyond a reasonable doubt that the error had no significant impact on the verdict. *See Olson*, 482 N.W.2d at 216. The state's evidence of identity was strong, despite Oates's highlighting of minor inconsistencies in the eyewitness testimony. More importantly, there was eyewitness testimony identifying Oates as the person fleeing the South Beach in a deliberate, conspicuous manner different from that of the terror-stricken patrons scattering in confusion. Given this strong evidence of immediate flight from the scene, the instruction on the minimal evidence of later flight could not have had a significant impact on the verdict.

■ 2. Oates argues that the trial court abused its discretion in admitting Spreigl evidence and "relationship" evidence of his prior encounters with Ricky Fuller. The admission of Spreigl evidence lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *State v. Spaeth*, 552 N.W.2d 187, 193 (Minn.1996).

The trial court agreed with the prosecutor's argument that a Spreigl analysis did not apply to evidence of Oates's prior bad acts that were offered to prove Oates's relationship with Fuller, the intended victim. The supreme court has held that a Spreigl notice is not required for "relationship" evidence. *State v. Boyce*, 284 Minn. 242, 260, 170 N.W.2d 104, 115 (1969). But the court has applied a Spreigl analysis to "relationship" evidence. *See State v. Bauer*, 598 N.W.2d 352, 364 (Minn.1999) (holding that before admitting "relationship" evidence, court must find it to be shown by clear and convincing evidence and to have probative value outweighing potential for unfair prejudice); *State v. Williams*, 593 N.W.2d 227, 236 (Minn. 1999) (same).

■ The state's reliance on *State v. Cross*, 577 N.W.2d 721 (Minn.1998) to establish that Spreigl procedures do not apply to "relationship" evidence is misplaced. *Cross* involved the domestic abuse homicide statute, in which a "past pattern of domestic abuse," which is, in effect, the history of the "relationship," is an element of the offense. *See* Minn.Stat. § 609.185(6) (1998). Oates's relationship with Fuller was not an element of any of the offenses charged against him. Evidence concerning the relationship was offered only to prove identity and motive.

■ Although the trial court erred in failing to conduct a Spreigl analysis on the "relationship" evidence, Oates fails to show that such an analysis would have resulted in a different ruling. Clear and convincing evidence may be established by the testimony of a single witness. *See State v. Kennedy*, 585 N.W.2d 385, 389 (Minn.1998). Fuller provided clear and unequivocal testimony about the first two "relationship" incidents, the argument with Fuller's nephew's friend and the fistfight between Oates and Fuller. Neither of these two incidents was very serious or

very similar to the charged offense. Therefore, under a Spreigl analysis comparing their probative value to the potential for unfair prejudice, both incidents would still have been admissible. *See generally State v. Bolte*, 530 N.W.2d 191, 196–97 (Minn.1995) (detailing Spreigl procedural requirements and safeguards). Finally, the two incidents were plainly relevant to prove motive, as well as identity, and the state showed a need for the incidents to establish a connection between Oates and Fuller.

 The trial court should have given a Spreigl cautionary instruction for the "relationship" evidence. Oates did not request such an instruction and therefore could be held to have waived this claim of error. *State v. LaForge*, 347 N.W.2d 247, 251 (Minn.1984). We conclude, however, that this error was harmless, even considered cumulatively with other error.

The trial court properly admitted as Spreigl evidence police testimony that Oates fired shots outside the Riverview night club in November 1997. The testimony met the clear and convincing standard for Spreigl evidence. Moreover, the evidence of Oates's guilt is quite strong. The state presented two firm eyewitness identifications, along with one tentative identification, coupled with Fuller's testimony that he saw Oates in the South Beach club that night.

 The erroneous admission of "other crimes" evidence may be harmless if the other evidence of guilt is sufficiently strong. *See State v. Dolbeare*, 511 N.W.2d 443, 446 (Minn.1994). The supreme court has indicated that Spreigl error must be harmless beyond a reasonable doubt, i.e., the verdict must be surely unattributable to the error. *State v. Shannon*, 583 N.W.2d 579, 585 (Minn.1998). The eyewitness identifications were corroborated by discovery in Oates's residence of the same brand of ammunition as the fatal bullet, along with several shirts of the same type that the gunman wore. The state also

presented the first two "relationship" incidents establishing some relationship between Oates and Fuller. We conclude that the failure to give a Spreigl cautionary instruction or to engage in Spreigl analysis for the "relationship evidence" was harmless error. The verdict was "surely unattributable" to this error, even considered cumulatively to the error in instructing the jury on flight evidence.

3. Oates argues that the evidence is insufficient to support his conviction. He contends that the evidence is insufficient to prove beyond a reasonable doubt that he was the shooter or that he had an intent to kill.

 In reviewing a claim of insufficient evidence, this court must view the evidence in the light most favorable to the verdict and assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Johnson*, 568 N.W.2d 426, 435 (Minn.1997). The court must review the record to determine whether the jury could reasonably find the defendant guilty, given the facts in evidence and the legitimate inferences to be drawn from them and given the necessity of proof beyond a reasonable doubt. *Id.*

 Oates points to inconsistencies and uncertainties in the eyewitness testimony about the shooter. But identification is a question of fact for the jury to determine. *State v. Otten*, 292 Minn. 493, 494, 195 N.W.2d 590, 591 (1972). Despite some inconsistencies and less-than-certain identifications among the eyewitnesses, it is the jury's function to determine the weight and credibility of individual witnesses. *State v. Bliss*, 457 N.W.2d 385, 390 (Minn.1990).

 There was ample corroboration of the eyewitness identifications. First, police found in Oates's home 9 mm ammunition made by the same manufacturer as the cartridge casings and bullet fragments found at the scene. Second, police found in the residence a box for a 9 mm semiautomatic of the same type used in the shoot-

ing. Third, police found, again at Oates's residence, a number of shirts of the same type as that worn by the gunman. Finally, there was evidence that Oates had some motive to assault Fuller.

We also find no merit to Oates's claim that the evidence is insufficient to prove intent to kill. Intent must generally be inferred from a defendant's words or acts in light of surrounding circumstances. *State v. Andrews*, 388 N.W.2d 723, 728 (Minn.1986). This court has held that a single shot, even one fired from a moving car, may be sufficient to establish an intent to kill. *State v. Chuon*, 596 N.W.2d 267, 271 (Minn.App.1999), *review denied* (Minn. Aug. 25, 1999). Firing up to seven shots, in close quarters in a crowded bar, after putting a gun to the head of the intended victim, provides ample evidence of intent to kill.

4. Oates argues that the trial court erred in imposing sentences on the assault convictions because they occurred in the course of a single behavioral incident. *See* Minn. Stat. § 609.035 (1998). But there is a court-created multiple-victim exception to that statute's limitation on multiple sentencing. The court may sentence on one offense per victim, even for conduct that is part of the same behavioral incident, as long as the overall sentence does not exaggerate the criminality of the defendant's conduct. *See State v. Cole*, 542 N.W.2d 43, 53 (Minn.1996). We reject Oates's argument that the aggregate sentence of 378 months exaggerates the criminality of his conduct. Firing several shots in a crowded bar, with intent to kill one individual but heedless of the mortal risk posed to countless others, is not comparable to the typical homicide.

## DECISION

The trial court erred in instructing the jury on evidence of flight and in admitting "relationship" evidence without following a Spreigl analysis and without giving a Spreigl cautionary instruction. These er-

rors, however, were harmless, even considered cumulatively. The evidence is sufficient to support the conviction, and the trial court did not abuse its discretion in imposing consecutive sentences for assault.

**Affirmed.**