## STATE v. DAVE YAEDKE.

242 N. W. 2d 601.

May 7, 1976—No. 44404.

*Streater, Murphy, Brosnahan & Langford* and *Kent A. Gernander*, for appellant.

*Warren Spannaus*, Attorney General, and *Julius E. Gernes*, County Attorney, for respondent.

Heard before Rogosheske, Todd, and Breunig, JJ., and considered and decided by the court en banc.

PER CURIAM.

Defendant, Dave Yaedke, appeals from a conviction for selling controlled substances and from an order denying his motion for a new trial. Yaedke alleges as error (1) the trial court's failure to order the prosecution to disclose the name of the informant and to instruct the jury as to inferences to be drawn against the prosecution from its refusal to produce the informant; (2) the prosecution's use of reputation evidence; (3) improper final argument by the county attorney; and (4) the trial court's failure to direct a verdict of acquittal or judgment notwithstanding the verdict. We affirm.

The state's evidence in this case consisted principally of the testimony of Patrick L. Shannon, an undercover narcotics agent for the Minnesota Bureau of Criminal Apprehension. In the spring of 1972, he was working in the Winona, Minnesota, area. At this time, he was using three or four informants to aid in the apprehension of sellers of controlled substances. He testified that on three or four occasions he had been accompanied to the Winona area by one Nick Cieminski who resided in Rochester, Minnesota. On April 24, 1972, Cieminski took Shannon to Yaedke's apartment in Winona where he introduced Shannon to Yaedke. Shannon testified that Cieminski asked Yaedke about some grass, then excused himself to go to the bathroom. Shannon purchased marijuana and LSD from Yaedke, then called Cieminski back into the room, and they left. Shannon further testified that although he had not met Yaedke before April 24, he had received information that "Dave and Brad" were engaged in selling drugs, and an informant had advised him that there was some marijuana and LSD at Yaedke's apartment which Shannon might be able to buy.

Yaedke testified that he had known Cieminski for several years and that he was a drug addict. Yaedke stated that Cieminski had come to his apartment on numerous occasions immediately prior to April 24, urging Yaedke to sell him drugs, and that Yaedke finally agreed to sell Cieminski some marijuana which

he had purchased for his own use. Yaedke further testified that his neighbor, Brad Taft, had left some LSD pills with him to be delivered to Cieminski at an agreed price when Cieminski picked up the marijuana.

At all stages of the proceedings, from the preliminary hearing through the trial, counsel for Yaedke sought disclosure of the name of the informant who had originally provided Shannon with information about Yaedke's drug-dealing activities. Yaedke's counsel also sought information from the state regarding Cieminski's whereabouts and whether Cieminski and the informant were in fact one and the same person. The state objected to disclosure of all such matters on the ground of the informant's privilege, and the court sustained these objections. Cieminski was not called as a witness by the state and his exact whereabouts at the time of trial was unknown to the prosecution. Defense counsel had subpoenaed Cieminski at the preliminary hearing but could not locate him then or at the time of trial. In submitting the case to the jury, the trial court refused to instruct the jury that it could draw inferences adverse to the state from its failure to produce the informant or Cieminski. However, the trial court allowed defense counsel during his closing argument to point out to the jury that the prosecution could have called these people as witnesses and did not.[1]

At the arraignment, the prosecution filed a negative Spreigl notice indicating it would offer no evidence of Yaedke's prior criminal activities. Just prior to commencement of the trial, the prosecution stated that, since it was aware of defense counsel's intent to raise the entrapment defense, it planned to offer evidence of Yaedke's reputation to rebut that defense.

■ Yaedke's claims regarding his right to disclosures as to the informant's identity and to instructions on adverse inferences which should be drawn in the absence of such disclosures are identical to claims raised by the defendant in another case

---

[1] Permitting the comment was an unwarranted advantage to the defendant. See, State v. Thomas, 305 Minn. 513, 232 N. W. 2d 766 (1975).

we recently decided. State v. Villalon, 305 Minn. 547, 234 N. W. 2d 189 (1975). The material facts in that case were virtually indistinguishable from those involved in the present action, to the point where some of the major characters in the two cases—the chief prosecution witness, the prosecuting attorney, and the trial judge—are identical. Our reasoning and conclusion in Villalon, in rejecting identical claims revolving around the state's failure to disclose or produce an informer, are dispositive of these contentions raised by Yaedke.

■ The receipt of testimony by Agent Shannon that he had heard that "Dave and Brad" were selling drugs was proper although no Spreigl notice[2] was given. This precise claim of alleged error was disposed of in State v. Grilli, 304 Minn. 80, 230 N. W. 2d 445 (1975), decided after this case was tried. We further note that the trial judge astutely anticipated our decision in Grilli by offering to the defense the same type of pretrial entrapment hearing subsequently approved in our Grilli decision.

■ We have reviewed the final argument of the prosecutor, and while certain isolated statements may seem questionable, considered as a whole, it was well within the bounds of proper final argument. Likewise, a careful review of the record discloses no basis whatsoever for granting a directed verdict of acquittal or judgment notwithstanding the verdict.

Affirmed.

---

[2] See, State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965), holding that in criminal prosecutions evidence that an accused has been guilty of additional crimes and misconduct on other occasions, although otherwise admissible under some exception to the general exclusionary rule, shall not be admissible unless within a reasonable time before trial the state furnishes defendant a statement in writing of the offenses and misconduct it intends to show he has committed.