STATE of Minnesota, Respondent,

v.

Michael D. HOULE, Appellant.

No. 46096.

Supreme Court of Minnesota.

July 29, 1977.

C. Paul Jones, Public Defender, Jeanne L. Schleh and James Christopher Cuneo, Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Keith M. Brownell, County Atty., Richard C. Hansen, Regional Pros., 6th Judicial Dist., Duluth, for respondent.

Heard before MacLAUGHLIN, SCOTT and STAHLER, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, Justice.

Defendant, Michael D. Houle, was found guilty by a jury of aggravated robbery and has appealed from the judgment of conviction. Because we find that no prejudicial errors occurred during the course of the trial, we affirm.

Shortly after midnight on October 29, 1974, a man wearing striped bib overalls, a jacket, and a cap on top of a blond, bushy wig held up the Kom On Inn in Duluth, Minnesota. The robber, whose face was covered by a red bandanna, pointed a single-barrel pump shotgun at the bartender and ordered him to empty the till. The man seized the money and ran out the rear door. As he left, the bartender heard the sound of a single shot being fired.

The next night, at approximately 12:30 a. m., Officer Robert Schamberger of the Duluth Police Department was working at an off-duty job in a Duluth restaurant when he received a telephone call from an informant from whom he had obtained reliable information in the past. The informant told Schamberger that he had overheard Thomas Pfuhl state that he had robbed the Kom On Inn with a shotgun and that he had seen Pfuhl display a large amount of money.

Schamberger got permission to leave his off-duty job to verify this information. Having been told by the informant that Pfuhl and two companions could be found at the Derby Diner in Duluth, Schamberger went there, looked in the window, and saw two men and a woman who fit the description given by the informant. Schamberger flagged down a passing squad car, and with the assistance of one of the two officers entered the restaurant to investigate further, while the other officer remained outside.

The officers saw Pfuhl take some cash and covertly hand it to his wife who was seated with him. Upon confiscation, the amount of money was found to be $62. Pfuhl and his male companion, Timothy Ripley, were taken into custody and trans-

ported to police headquarters where they were separately interrogated.

During his conversation with the police, Ripley admitted that he had given the confiscated money to Pfuhl and that he, Ripley, and defendant had robbed the Kom On Inn on the previous night. Ripley stated that he had driven defendant's car and stayed outside while defendant went inside, wearing a blond wig and striped bib overalls. Ripley described the robbery in detail and told the police that the clothing worn by defendant could be found in Richard Kennedy's garage although Kennedy did not know the articles of clothing had been hidden there.

As a result of this statement, Pfuhl was released and Ripley was placed under arrest and charged with robbery. Thereafter, a squad car was dispatched to locate defendant and he was arrested at 3:30 a. m. When defendant was taken into custody and searched, $325 and three 20-gauge shotgun shells were found in his pockets.

Acting on the information supplied by Ripley, the police went to Kennedy's residence. Kennedy turned over to the police a single-barrel pump shotgun, which Kennedy later testified he had loaned to defendant on the night of the robbery. With Kennedy's consent, the officers searched Kennedy's garage and found the blond wig, striped bib overalls, and jacket, which were worn during the holdup, hidden between two old tires.

In January 1975, shortly before trial, defendant's counsel moved in chambers for disclosure of the identity of the informant who had implicated Pfuhl. The trial court refused to compel the disclosure of the informant's name on the grounds that it would be detrimental to the work of the police department and would endanger the safety of the informant.

During the trial Ripley, who had been charged with the same robbery, testified for the state. He admitted that in return for his testimony he had been promised "probation and one year up at the work farm." Ripley testified that defendant had committed the robbery while Ripley drove the get-away car and that the pump shotgun used by defendant had been borrowed from Kennedy. Ripley told the jury that he and defendant had returned the gun to Kennedy, had hidden the wig and clothing in Kennedy's garage, and had divided the money. Ripley stated that Pfuhl did not "pull the robbery" with him.

Pfuhl, who had been named by the undisclosed informant, testified for the state. Pfuhl denied any involvement in the robbery and stated that he had heard Ripley and defendant talking about the holdup on the night of their arrest.

Kennedy was also a witness for the state and testified that defendant had borrowed his pump shotgun loaded with four shells on the night of the robbery. Kennedy stated that he had been awakened at 2:00 a. m. when defendant and Ripley returned the shotgun. Kennedy testified that on the next day defendant had told him of the robbery and had said, "Yeah, it was us."

The bartender at the Kom On Inn gave testimony about the holdup but was not able to identify defendant as the person who had committed the robbery.

After the state rested, the defense called Officer Schamberger as its sole witness. Schamberger gave testimony with respect to the informant's telephone call implicating Pfuhl in the robbery and repeated the allegations made by the anonymous informant.

The jury found defendant guilty of aggravated robbery and he was sentenced to the Minnesota State Prison for a term of 3 to 20 years. This appeal followed.

1. Defendant argues that the trial court's refusal to order disclosure of the name of the informant who had given information implicating Pfuhl denied defendant a fair trial. After an in-chambers discussion, the trial court denied defendant's motion to force disclosure on grounds that the informant had been a source of reliable information in the past and was currently assisting the police department in another case. The trial court also expressed concern for the safety of the informant if his identity were disclosed.

■ Whether error results from the refusal of a trial judge to require disclosure of an informant depends on the particular circumstances of each case. See, generally, Annotation, 76 A.L.R.2d 262. The state, in the exercise and enforcement of its police powers, uses informants in the detection of many types of crimes. Although the state is privileged to maintain channels of communication about criminal activities by shielding the identity of an informer, the privilege to withhold an informant's identity is limited by the fundamental requirements of fairness. Thus, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

In *State v. Villalon,* 305 Minn. 547, ——, 234 N.W.2d 189, 191 (1975), we set forth the standards to be applied in determining whether the identity of an informant properly has been withheld:

"In recent years, this court has had several opportunities to apply the informer privilege rules set out in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *State v. Purdy,* 278 Minn. 133, 153 N.W.2d 254 (1967), we held that when an informant is a mere transmitter of information and not an active participant so as to be a competent witness to the crime itself, the informant's name need not be disclosed. See, also, *State v. DeSchoatz,* 280 Minn. 3, 157 N.W.2d 517 (1968). Most recently, in *State v. Werber,* [301] Minn. [1], 221 N.W.2d 146 (1974), a case which involved greater inducement and participation by the informer than was present here, we held disclosure was not mandated. In all of the cases, state and Federal, the decision turns on the element of the informer's presence or participation in the criminal transaction. Since the informer here was not a witness to the sale, he was not in a position to corroborate defendant's contention. As such, his testimony cannot be characterized as relevant and helpful to the defense, and the lower court was correct in denying disclosure of the informer's identity."

See, also, *State v. Yaedke,* Minn., 242 N.W.2d 601 (1976).

In *State v. Luciow,* Minn., 240 N.W.2d 833 (1976), we dealt with a defendant's right to challenge the truth and accuracy of allegations made by an undisclosed informant in a facially sufficient affidavit used to obtain a search warrant. In *Luciow* we outlined the procedures to be followed by the trial court when such a challenge has been made and remanded to the trial court since the record was ambiguous as to the reasons for denying disclosure of the informant's identity.

■ In the instant case, however, the trial court made a proper determination of whether disclosure should be required and a review of the record indicates that nondisclosure did not unduly prejudice the defense in any manner sufficient to outweigh the public interest in preserving the anonymity of the usually reliable informant.

The undisclosed informant was a mere transmitter of information to Officer Schamberger and was not alleged to be a participant or observer of the crime itself. Any claim of prejudice to defendant's right to a fair trial by reason of the nondisclosure was considerably reduced by the testimony of Schamberger who related to the jury the information given him by the informant. That information pointed to Pfuhl and did not in any way implicate defendant. While the informant may have been able to offer testimony to impeach the credibility of Pfuhl, it would not have been substantive evidence. Any claim of additional benefit to be derived from testimony given by the informant himself is purely speculative in view of the fact that the record is replete with evidence of defendant's guilt. Under all the circumstances, it clearly was not error for the trial court to refuse to order the disclosure of the informant.

2. Defendant argues that the evidence presented by the state was insufficient as a matter of law to corroborate the testimony of Ripley, the admitted accomplice, and to sustain defendant's conviction. Minn.St. 634.04, provides:

"A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

 Our case law defines an accomplice as one who has been or who could be convicted of the same offense with which the defendant has been charged. *State v. Jensen,* 289 Minn. 444, 184 N.W.2d 813 (1971). The testimony of an accomplice is admittedly suspect and is likely to have been given in hope of receiving clemency by turning state's evidence. *State v. McLaughlin,* 250 Minn. 309, 320, 84 N.W.2d 664, 672 (1957). In this case, the accomplice, Ripley, admitted that he had been promised such clemency in return for his testimony against defendant at trial.

However, corroboration need not establish a prima facie case and is sufficient if it restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree. *State v. Sorg,* 275 Minn. 1, 144 N.W.2d 783 (1966). See, *State v. Nelson,* 300 Minn. 506, 217 N.W.2d 769 (1974).

The state presented abundant evidence to corroborate Ripley's testimony. The bartender gave testimony that he had heard one shot after the robber left the back door of the Kom On Inn. Kennedy stated that defendant had borrowed his pump shotgun loaded with four shells, and the arresting officers found three shells in defendant's pocket. There was evidence that $325 in bills had been found on defendant's person at the time of his arrest, and both Kennedy and Pfuhl testified that defendant had made statements indicating that he had committed the robbery in question. Other evidence contained in the record is amply supportive of defendant's guilt and is sufficient to corroborate Ripley's testimony and to sustain defendant's conviction.

3. Defendant argues, and the state agrees, that the trial court's charge to the jury concerning the presumption of innocence was in error. That portion of the charge stated:

" * * * The rule of law which clothes every person accused of a crime with a presumption of innocence and imposes upon the state the burden of establishing his guilt beyond a reasonable doubt is not to aid the guilty to escape punishment but is to guard against the danger of an innocent man being unjustly convicted and punished."

In *State v. Thomas,* Minn., 239 N.W.2d 455 (1976), and more recently in *State v. Hill,* Minn., 253 N.W.2d 378 (1977), we took exception to similar statements made by a prosecutor during final argument. However, while we do not condone this instruction and are confident it will not be repeated, we have concluded as we did in *Hill,* that in light of the record as a whole the instruction was not such substantial error as to require reversal of defendant's conviction and is harmless beyond a reasonable doubt.

We have considered the contention of defendant that the trial court committed other errors in its instructions to the jury, and find them to be without merit.

Affirmed.