**STATE of Minnesota, Respondent,**

v.

**William D. JONES, Appellant.**

**No. C4–82–1298.**

Supreme Court of Minnesota.

April 20, 1984.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Milligan, Cass County Atty., Walker, for respondent.

WAHL, Justice.

William Jones was convicted of the first-degree murder of Deborah Jean Fairbanks in violation of Minn.Stat. §§ 609.185(1) and 609.05(1) and (2) (1982). Edwin Monroe, who stabbed Fairbanks 35 times with a hunting knife and was permitted to plead guilty to the charge of murder in the second degree, testified at trial that Jones had held Fairbanks down while he, Monroe, killed her. Jones raises claims of trial error on appeal, but his main contention is that the evidence was insufficient to corroborate the testimony of the accomplice, to prove beyond a reasonable doubt that the homicide was not committed in the heat of passion, or to prove that it was premeditated. We affirm.

William Jones had attended a New Year's Eve party at the home of his sister, Patti Sue Headbird, in Cass Lake. In the early morning hours of January 1, 1982, the party ran out of liquor. Jones, Headbird, Julie Jones, Beverly Jacobs, George Earth and Monroe went in Monroe's car, with Monroe driving, to search for more liquor. Shortly after leaving Headbird's house, Earth and Jones got into an argument. Monroe stopped the car by the side of the road so the two could fight outside. Everyone got out of the car, but before a fight actually developed, a car came along and hit Headbird, throwing her up against Monroe's car, breaking her leg and causing several cuts and bruises. The car then sped off.

Jones tried to calm his screaming sister while other members of the party ran to get blankets and to call an ambulance and the police. Jones and Monroe then jumped into Monroe's car to chase the hit-and-run car. They caught up with it approximately 8 blocks away in front of Kim Fairbanks' home, where the driver of the car, Deborah Fairbanks, lived. Monroe rammed the car several times with his car to keep it from escaping. Jones jumped out of Monroe's car and into the passenger side of Fair-

banks' car. He put the shift lever into "park" then hit Fairbanks several times, asking why she had run into his sister. A few moments later, Monroe opened the door on the driver's side of the car and tried to pull Fairbanks out of the car, but she was hanging on to the steering wheel. Jones knocked her hands from the wheel so Monroe could pull her out.

Jones testified that at this time his attention was caught by the bright fog lights of a truck backing out of the alley behind the Fairbanks' home. He said that he got out of Fairbanks' car on the passenger side and stood toward the back of the car and watched the truck as it turned and came down the street. He then realized that Monroe was hitting and punching Deborah. Jones had to call to Monroe several times that he wanted to go see how his sister was before Monroe came back to his car.

Monroe testified that, as they chased Fairbanks' car, Jones said, "That bitch is dead" and asked, "Are you with me?" Somehow, Monroe's hunting knife was transferred from the glove compartment of the car to his pocket. He said he did not know how that happened until the prosecutor asked, "Now, did William Jones hand you the knife?" Monroe answered, "yeah." Monroe further testified that Jones followed Fairbanks out of the driver's side of her car and held her down while Monroe stabbed her 35 times with the knife. Fairbanks' body had stab wounds on the front, back and all sides, entering from many different angles. Monroe finally looked up, saw the truck coming and decided it was time to go. Jones testified that he never saw the knife and did not know that Monroe was stabbing Fairbanks.

Monroe and Jones drove back to the scene of the hit-and-run accident. On the way there, Monroe told Jones he was wanted by police and that they should tell the police that his name was Duane Rogers and that they had chased the car and rammed it a few times but that it got away. They arrived back at the scene before the ambulance came. The call to the ambulance was received at 4:40 a.m., and it arrived at the scene of the accident at 4:49 a.m.

Police Chief Vikre arrived on the scene shortly after the ambulance arrived. He helped get Patti Sue Headbird on a stretcher and discussed the accident with Jones, who told him the story he and Monroe had agreed upon. Chief Vikre then spoke with George Earth, drove Jones to the hospital and began to search for Deborah Fairbanks' car on the basis of the information he had received from Earth. During this time, Monroe stayed in his car, went to the hospital, spoke to the others briefly and disappeared. Police later found Monroe's knife near his cabin at a resort. They found him at a house in Bemidji after Jones finally gave them Monroe's correct name.

Monica Reuter, who lived across the street from the Fairbanks, testified that she had been awakened by an ill grandchild and while caring for the grandchild had heard a loud noise outside. When she looked out the window she saw the cars and a man standing beside one of them looking north. Her attention was drawn in the same direction by the brightly lit truck, which she watched for a few moments. She then went back to bed.

John Charnoski, the driver of the truck, testified that he had been kicked out of the party he tried to join at Kim Fairbanks' house. When he left, he drove slowly out of the alley and then along the street where two cars were parked. He said that he saw and recognized Monroe and Jones behind the two cars and that they were bending over and hitting and punching a third person, who was down in the snow.

In return for his promise to testify against Jones, three pending criminal charges were dropped against Monroe and he was allowed to plead guilty to second-degree murder. Jones went to trial and was found guilty of aiding first-degree murder. He was sentenced to the mandatory life term that he is currently serving.

Jones raises these issues on appeal:

1. Was the evidence sufficient as a matter of law to sustain the conviction for aiding murder in the first degree?

2. Did the trial court commit reversible error by failing to include in its instruction on the elements of murder in the first degree that if defendant acted in the heat of passion, he could not be guilty of murder in the first degree?

3. Did the trial court commit reversible error by refusing to preclude the state from using defendant's prior conviction for aggravated assault as impeachment evidence?

4. Did the trial court abuse its discretion by refusing to sequester the alleged accomplice during the testimony of the key corroborating witness?

■ 1. The primary thrust of the appeal is that the evidence is insufficient to sustain a conviction of murder in the first degree. Jones recognizes that if the jury, acting with due regard for the presumption of innocence and the necessity for overcoming that presumption by proof beyond a reasonable doubt, could conclude that he was proven guilty of the offense charged, this court will not disturb the verdict. As a reviewing court, we must view the evidence in the light most favorable to the verdict and assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Wahlberg*, 296 N.W.2d 408 (Minn.1980). Nevertheless, the state must prove every element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Jones argues that the evidence is lacking to prove beyond a reasonable doubt that he aided in the commission of the crime, that the crime was not committed in the heat of passion, or that the crime was premeditated.

■ The state did not seek to prove that Jones himself killed Deborah Fairbanks but rather that, under section 609.-05(1) and (2), he aided another, Monroe, who struck the fatal blows, and was, thus, equally guilty of first-degree murder. Monroe testified as an accomplice. An accomplice is one who has been or could be convicted of the same offense with which the defendant in a criminal case has been charged. *State v. Jensen*, 289 Minn. 444, 184 N.W.2d 813 (1971). Because the testimony of an accomplice is suspect and likely to have been given in hopes of receiving clemency, as Monroe here was permitted to plead guilty to a lesser degree of homicide, corroboration is required. *State v. Houle*, 257 N.W.2d 320 (Minn.1977).

■ Minnesota Statutes § 634.04 (1982) provides: "A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Monroe testified that Jones said, "That bitch is dead" and asked, "Are you with me?" while they were chasing the hit-and-run car and that, once they stopped, Jones removed Fairbanks' hands from the steering wheel so that Monroe could drag her out of the car. He testified further that Jones held her down while Monroe stabbed her. Monroe's testimony alone is insufficient to convict Jones.

What corroborating evidence then is sufficient to meet the requirement of section 634.04? In *Houle*, we determined that it need not be such as to establish a *prima facie* case. There, we said corroborating evidence "is sufficient if it restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree." 257 N.W.2d at 324. In this case, there is corroborating evidence that Jones was bending over Fairbanks while she was still screaming. This evidence comes from the testimony of John Charnoski, who recognized both Monroe and Jones bending over Deborah Fairbanks as she lay in the snow. This testimony "tends to convict" Jones of aiding the murder.

■ Jones argues that Charnoski's testimony is not credible because of the amount of beer he had drunk in the preceding hours and the fact that he did not contact the police or come forward with what he saw until the police contacted him. Further, Charnoski had testified to peripheral facts before the grand jury that were quite different from those to which he testified

at Jones' trial. The determination of the credibility of a witness, however, is not a question for this court but lies within the province of the jury.

Even if Charnoski's testimony were not credible, and we must accept that the jury found it was, all that is necessary for a conviction of aiding in a crime is that "the accused plays at least some knowing role in the commission of the crime and takes no steps to thwart its completion." *State v. Strimling,* 265 N.W.2d 423, 429 (Minn.1978). Circumstantial evidence from which can be inferred defendant's participation in the crime is enough to corroborate the accomplice's testimony. *State v. Rasmussen,* 241 Minn. 310, 63 N.W.2d 1 (1954). In *Rasmussen,* this court held that the defendant's admitted presence at the crime, along with other circumstantial evidence, was sufficient for the jury to infer participation.

Here, Jones admitted to being present and to knowing that Monroe was beating Deborah Fairbanks. Jones was the person who had some motive for the killing, because it was his sister whom Fairbanks had hit with her car. Further, Jones had been hitting Fairbanks himself and had knocked her hands off the steering wheel to facilitate Monroe's getting her out of the car. That Jones was present and angry and had engaged in violent behavior toward Fairbanks already is sufficient evidence for the jury to disbelieve his testimony that he knew nothing about the knife or that Monroe was stabbing her and to believe Monroe's testimony that Jones held her down.

The more difficult issue is whether there was sufficient evidence for the jury to find beyond a reasonable doubt that Jones premeditated Deborah Fairbanks' murder and did not act in the heat of passion. A determination of premeditation must be justified by an examination of the totality of the circumstances. *State v. Marsyla,* 269 N.W.2d 2 (Minn.1978). The length and severity of a beating has been held sufficient to support a jury finding of premeditation. *State v. Walker,* 306 Minn. 105, 120, 235 N.W.2d 810, 820 (1975). The

defendant there also had a motive to kill the victim, and the injuries were such that they were most likely inflicted by strangulation. There was no direct evidence of premeditation. Here, however, the defendant, William Jones, did not stab Deborah Fairbanks. The only direct evidence of premeditation is Monroe's testimony. Again, Monroe's testimony alone is insufficient to convict Jones.

The circumstantial evidence appears to support either Monroe's or Jones' testimony. They were chasing the hit-and-run car. Jones' attention could have been entirely concentrated on keeping track of the car ahead. On the other hand, he could have been planning Fairbanks' murder and digging through the glove compartment for a knife. He could have planned that Monroe do the stabbing and have handed the knife to Monroe once he found it. Jones did have a reason to be angry, and whether that anger converted into planning a murder or acting spontaneously as events progressed is not proved either way by the circumstances. The jury, however, found that the circumstances corroborated Monroe's testimony, and there is no reason to disturb that finding.

2. Jones argues that the court erred in failing to specifically instruct the jury that if they found heat of passion on Jones' part, they could not find first-degree murder. The court instructed the jury on first- and second-degree murder, first-degree manslaughter and aggravated assault, carefully explaining the elements of each and the consequence of failing to find one or another element. The jury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case. *State v. Williams,* 324 N.W.2d 154 (Minn.1982). Viewed in their entirety, the jury instructions, as they related to the heat of passion element of first-degree manslaughter, were very clear. Further, the court said, "An unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated." While not covering heat of passion, this instruction gave guidance on pre-

meditation that is similar to that required on heat of passion. Furthermore, there was no objection to the lack of a more specific instruction at trial. We find no error under these circumstances.

3. Jones contends that he was denied his right to a fair trial when the trial court refused to preclude the state from using a prior conviction for aggravated assault to impeach him. Arguably, such a conviction has no bearing on his capacity for veracity. Defense counsel opposed the prosecutor's motion to use the prior conviction for impeachment. The court granted the prosecutor's motion to balance defense counsel's use of Monroe's prior conviction and plea bargain for impeachment of Monroe's testimony. This court will not overrule the trial court's granting of a motion for admission of evidence unless there was a clear abuse of discretion. *State v. Brouillette*, 286 N.W.2d 702, 707 (Minn.1979). In this case, a cautionary instruction was given to the jury, and the prior conviction was brought out on direct examination by the defense. Prior-conviction evidence is always prejudicial to the defendant, but our cases and Minn.R.Evid. 609(a) permits its use under certain conditions. Given the discretion allowed to the trial court in evidentiary matters, there was no clear abuse of that discretion in this case.

4. Jones contends, finally, that Monroe should have been sequestered during Charnoski's testimony because that testimony was the corroborating evidence for Monroe's account of the murder. Sequestration of witnesses is another matter which is within the trial court's discretion. Minn.R.Crim.P. 26.03, subd. 7. Sequestration, however, should rarely be denied. *State v. Garden*, 267 Minn. 97, 125 N.W.2d 591 (1963). In *Garden,* this court reversed the trial court, concluding that in a new trial the witnesses should be sequestered because there was a vital issue at stake. The issue was the guilt or innocence of the accused.

In this case, Jones' participation in the crime is the issue at stake. It is also a vital issue. Defense counsel did not move for sequestration, however, until 11 of the prosecution's 14 witnesses had already testified. Charnoski's testimony essentially came out during the examination of law enforcement witnesses. The sequestration of Monroe at that point would have served no purpose. In *Garden,* the sequestration motion had come before any testimony in the case. In this light, there was no abuse of discretion in refusing to sequester Monroe.

We hold that the evidence was sufficient for the jury to find that Monroe's testimony regarding Jones' role in the murder was corroborated and to convict Jones of aiding murder in the first degree. We hold further that the trial judge did not commit reversible error in the jury instructions, in allowing the prosecutor to use Jones' prior conviction for impeachment purposes or in refusing to sequester the accomplice during the corroboration testimony.

Affirmed.