STATE of Minnesota, Respondent,

v.

Gerald Lee HYSELL, Appellant.

No. C8–89–470.

Court of Appeals of Minnesota.

Jan. 2, 1990.

Hubert H. Humphrey III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Ross E. Arneson, Blue Earth County Atty., Mankato, for respondent.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and SCHUMACHER and FLEMING,* JJ., without oral argument.

## OPINION

NORTON, Judge.

Appellant Gerald Hysell was convicted of second degree assault after he shot a 12–year–old child in the leg with a compressed air pistol. The jury found that the air pistol was a dangerous weapon for purposes of the assault statute. On appeal, Hysell challenges the sufficiency of the evidence, jury instructions, and the trial court's refusal to impose a downward sentencing departure. We affirm.

## FACTS

In 1987, Gerald Hysell and Patricia Elwood shared an apartment. Elwood's 12–year–old daughter, Brenda, lived with them. Gerald and Patricia were subsequently married in May 1988.

In January or February 1988, Hysell bought an air pistol. The pistol was a Benjamin .177 caliber pistol which operated on compressed air and fired BB's or pellets.

One afternoon in March of 1988, Gerald, Patricia and Brenda argued all afternoon about whether Brenda had lied to her moth-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

er. The argument extended into the evening. Gerald brought the air pistol from the bedroom and put it on the kitchen table. Sometime later, Gerald loaded the pistol, pumped it and pointed it at Brenda. Brenda got up from her chair and moved away from Gerald. Gerald aimed the pistol at Brenda's crotch area and fired. A pellet struck Brenda on the inside upper thigh.

Approximately three to four weeks later, Patricia reported the shooting to the police as part of a list of complaints against Hysell. Hysell was charged with second degree assault. Police recovered the air pistol from a pawn shop in June 1988.

At trial, both Patricia and Brenda testified that Gerald loaded the pistol and aimed at Brenda when he shot her. According to Brenda, the pellet left a red mark which remained for two to three weeks. William Martinson also testified at trial. Martinson, a Mankato police officer and detective for 25 years, investigated the Hysell shooting. Although Martinson stated that he was not an expert on air pistols, he demonstrated use of the pistol and testified concerning its capabilities.

The jury found Hysell guilty of second degree assault. The trial court sentenced Hysell to the presumptive term of 42 months.

## ISSUES

1. Was the evidence sufficient to support the conviction for second degree assault?

2. Were the trial court's jury instructions improper and prejudicial?

3. Did the trial court abuse its discretion by refusing to impose a downward sentencing departure from the presumptive sentence?

## ANALYSIS

### Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, an appellate court examines the evidence by viewing it in the light most favorable to the verdict. *State v. Jones*, 347 N.W.2d 796, 800 (Minn.1984). The court must assume the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Flores*, 418 N.W.2d 150, 157 (Minn.1988). This court must determine whether from the facts in the record and the legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty. *State v. Race*, 383 N.W.2d 656, 661 (Minn. 1986). The weight and credibility to be given to the testimony of witnesses is for the jury to determine. *State v. Daniels*, 380 N.W.2d 777, 781 (Minn.1986).

Hysell argues that the evidence was insufficient to prove beyond a reasonable doubt that the air pistol was a dangerous weapon. Minn.Stat. § 609.02, subd. 6 defines a dangerous weapon as:

any firearm, whether loaded or unloaded, or any device. designed as a weapon and capable of producing death or great bodily harm, or any flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

The trial court here determined as a matter of law that the air pistol was not a firearm.

"Great bodily harm" means:

[B]odily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm.

Minn.Stat. § 609.02, subd. 8 (1988).

The Minnesota Supreme Court has stated that it is inclined to give the dangerous weapon statute an expansive interpretation. *LaMere v. State*, 278 N.W.2d 552, 555 (Minn.1979). This court has said that "the definition of dangerous weapon in subdivision 6 must be expressed in flexible terms and be broad and inclusive." *State v. Graham*, 366 N.W.2d 335, 337 (Minn.Ct. App.1985).

Although Minnesota has not determined that compressed air pistols are dangerous weapons, the supreme court has held that a .177 caliber BB pistol operated by carbon

dioxide is a dangerous weapon. *State v. Seifert,* 256 N.W.2d 87 (Minn.1977).

■ We believe that the evidence here was sufficient to support the jury's conclusion that the air pistol could qualify as a dangerous weapon. A "weapon" may be defined as:

> [a]n instrument of offensive or defensive combat, or anything used, or designed to be used, in destroying, defeating or injuring a person.

*Black's Law Dictionary* 822 (abridged 5th ed.1983). Under this general definition, the air gun would qualify as a weapon.

This court has held that loss of a tooth is great bodily harm. *State v. Bridgeforth,* 357 N.W.2d 393, 394 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985). It is reasonable to assume that the loss of an eye would also constitute great bodily harm. Consequently, a weapon capable of causing such injuries could qualify as a dangerous weapon.

Appellant argues that the actual injury inflicted here confirmed that the air pistol was not a dangerous weapon.

In applying the second degree assault statute, however,

> the assaultive conduct while using an object capable of inflicting great bodily harm is proscribed regardless of whether bodily harm is actually incurred.

*State v. Graham,* 366 N.W.2d 335, 337 (Minn.Ct.App.1985). Thus, the test is not whether great bodily harm resulted from a particular incident, but whether the instrument is capable of producing such harm.

Officer Martinson testified at trial that he believes air guns can be pumped up so that they will penetrate "like a .22, a .22 with a short round." Brenda Elwood testified that depending on how many times the gun was pumped, it could penetrate a pop can. She stated that she had seen the gun used to penetrate pop cans.

Based on these facts and the inferences that can be drawn from them, the jury reasonably could conclude that this type of compressed air pistol, which can be pumped to increase pellet velocity, was capable of producing great bodily harm.

Additionally, the manner in which the air pistol was used could be likely to cause great bodily harm. There was testimony that Hysell loaded the gun, pumped it, aimed at Brenda and fired. Under these circumstances, the evidence was sufficient to support the jury's conclusion that the air pistol was a dangerous weapon.

### Jury Instructions

Hysell argues that the trial court improperly instructed the jury that they may abide by a majority vote and that they must reach a verdict.

■ Trial courts have broad discretion in determining the propriety of a specific jury instruction. *State v. Shatto,* 285 N.W.2d 492, 493 (Minn.1979). On review, the jury instructions are viewed in their entirety to determine whether they fairly and adequately explained the law of the case. *State v. Jones,* 347 N.W.2d 796, 801 (Minn. 1984).

■ An instruction to the minority of jurors in a deadlocked jury to reconsider their views in light of the majority view is coercive. *State v. Phelps,* 328 N.W.2d 136, 140 n. 1 (Minn.1982). Although the jury in the present case was not deadlocked, the jury instructions included the phrase "you may be willing to abide by the majority vote." Hysell argues that this instruction constituted reversible error. However, this phrase is quoted out of context. The trial court actually instructed the jury as follows:

> You should not, however, be influenced to vote in any way on any question by the single fact that a majority of the jurors, or any number of them favor such a decision. *You may be willing to abide by the majority vote* but you should not surrender your honest convictions concerning the [e]ffect or the weight of the evidence solely because of the opinions of the other jurors. (emphasis added).

Viewed in its entirety, the instruction was not prejudicial.

■ An instruction to the jury that they must reach a verdict is also coercive.

*State v. Martin,* 297 Minn. 359, 366, 211 N.W.2d 765, 769 (1973). The trial court here did not instruct the jury that they must decide the case, but instead informed the jury that any verdict must be unanimous. This instruction also was not prejudicial.

### *Presumptive Sentence*

 The trial court has broad discretion in making sentencing departure decisions, and appellate courts generally will not interfere with that exercise of discretion. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). The general issue facing the sentencing court is whether the defendant's conduct was significantly more or less serious than that typically involved in the offense. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984).

Absent compelling circumstances, the presumptive sentence should be used. Minn.Sent. Guidelines II.D; *State v. Garcia,* 302 N.W.2d 643, 646 (Minn.1981).

Hysell argues that his conduct was less serious than the typical second degree assault. We disagree. Hysell assaulted a young girl who was living in his home. He has not demonstrated any compelling circumstances that would warrant a downward departure. The trial court did not abuse its discretion by imposing the presumptive sentence.

### DECISION

There was sufficient evidence to support the jury's determination that the air pistol was a dangerous weapon. The jury instructions were not prejudicial when viewed in their entirety. The trial court did not abuse its discretion by refusing to impose a downward sentencing departure.

Affirmed.