*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0306**

State of Minnesota,
Respondent,

vs.

Joshua David Donson,
Appellant.

**Filed January 30, 2017
Affirmed
Reyes, Judge**

Douglas County District Court
File No. 21-CR-15-1163

Lori Swanson, Attorney General, Karen Andrews McGillic, Assistant Attorney General, St. Paul, Minnesota; and

Chad Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and T. Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant argues that the state did not present sufficient evidence to prove that he used a dangerous weapon to assault C.P. We affirm.

FACTS

On June 4, 2015, S.N. and B.W. were sitting on S.N.'s front porch when they saw appellant Joshua Donson push two of three children off a step across the street. S.N. and B.W. then observed appellant point a BB gun or .22 caliber rifle (.22) at eight-year-old C.P. B.W. told appellant, "Dude, that's not okay," which prompted appellant to swear at S.N. and B.W., tell them to mind their own business, and threaten to beat up B.W. S.N. called 911 out of concern for the children.

The state charged appellant with second-degree assault in violation of Minn. Stat. § 609.222, subd. 1 (2014). Prior to trial, the district court added a fifth-degree assault charge as a lesser-included offense.

At trial, recorded statements of two of the children, K.P. and C.P., taken by a police officer, were admitted into evidence by stipulation of the parties. K.P. stated that appellant pointed a BB gun at C.P. and said, "[H]a ha bitch," while C.P. was riding a scooter. K.P. also stated that appellant put the gun away in a closet because S.N. and B.W. were going to call the police. C.P., however, denied seeing any BB guns and claimed that appellant did not push K.P. off the stairs, rather, K.P. jumped off the stairs.

S.N. and B.W. testified at trial, and S.N.'s 911 call was played for the jury. S.N. testified that she saw three children, one boy, one girl, and one child of which she could not determine the gender. She further testified that appellant pushed the boy and girl down the steps and that the little boy was not riding a scooter. During the 911 call, S.N. said that she saw appellant with either "a BB gun, a pellet gun, or a real gun." She

2

testified that she has seen a gun before in person, and that she did not think appellant was holding a toy.

B.W. testified that he saw three children: two boys and one girl. He also testified that he saw the butt of a gun and that it could have been a BB gun or a .22. B.W. further testified that appellant pointed the gun at a boy riding a scooter, holding the gun up at his shoulder in the way that one would hold a rifle. Finally, B.W. testified that he was "a hundred percent honest" that what he saw was a "gun."

The district court instructed the jury on the definition of a dangerous weapon, mirroring 10 *Minnesota Practice*, CRIMJIG 13.10 (2015), but made no reference to firearms because there was no allegation in the charge of the use of a firearm:

> A "dangerous weapon" is anything designed as a weapon and capable of producing death or great bodily harm, or anything else that in the manner it is used or intended to be used is known to be capable of producing death or great bodily harm.

The jury found appellant guilty of both second- and fifth-degree assault, and the district court sentenced appellant to 23 months in prison for second-degree assault. This appeal follows.

## D E C I S I O N

Second-degree assault, in relevant part, is defined as "an act done with intent to cause fear in another of immediate bodily harm or death" and during which a dangerous weapon was used. Minn. Stat. § 609.02, subd. 10 (2014); Minn. Stat. § 609.222, subd. 1; Appellant does not challenge the intent element of second-degree assault. Appellant only

3

argues that the state did not present sufficient evidence to prove that he used a dangerous weapon capable of causing death or great bodily harm to assault C.P.

This court's review of appellant's insufficient-evidence claim "is limited to a painstaking analysis of the record to determine whether the evidence . . . was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989) (citation omitted). "[W]e view the evidence in the light most favorable to the verdict" and assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Hayes*, 831 N.W.2d 546, 552 (Minn. 2013) (quotation omitted). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that the defendant was proven guilty of the charged offense." *Bernhardt v. State*, 684 N.W.2d 465, 467–77 (Minn. 2004) (quotation omitted).

As a preliminary matter, appellant argues that a heightened standard of review applies because the conviction was based on circumstantial evidence. However, a heightened standard of review does not apply in this case because the state presented direct evidence, in the form of eyewitness testimony, to prove whether appellant used a dangerous weapon to assault C.P. *See* 10 *Minnesota Practice*, CRIMJIG 3.05 (2015) (defining direct and circumstantial evidence); *see also Bernhardt*, 684 N.W.2d at 477 n.11 ("Direct evidence is [e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." (quotation omitted)).

**I.   The state presented sufficient evidence to prove that appellant used a dangerous weapon to assault C.P.**

Appellant argues that the state failed to prove that he assaulted C.P. with a dangerous weapon because the state did not show that the BB gun appellant pointed at C.P. was capable of producing death or great bodily harm or that appellant used the BB gun in a manner likely to cause death or great bodily harm. We address each of appellant's arguments in turn.[1]

**A.   The state presented sufficient evidence to prove that the device appellant pointed at C.P. was capable of producing death or great bodily harm.**

Appellant argues that the state did not prove that the BB gun was capable of producing death or great bodily harm because the state did not present evidence on the type of BB gun used or that the BB gun was loaded and operable. We disagree.

A dangerous weapon can be "anything designed as a weapon and capable of producing death or great bodily harm." CRIMJIG 13.10; *see also* Minn. Stat. § 609.02, subd. 6 (2014). The definition of great bodily harm includes "bodily injury . . . which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." Minn. Stat. § 609.02, subd. 8 (2014). Appellant does not challenge whether a BB gun is designed as a weapon.

---

[1] Appellant does not argue that the state presented insufficient evidence that he assaulted C.P. with a dangerous weapon in the form of a .22. However, a .22 is considered a dangerous weapon because it is a firearm. Minn. Stat. § 609.02, subd. 6 (defining dangerous weapon to include "any firearm, whether loaded or unloaded").

BB pellets are made to "pierce and harm the objects struck—whether bird, rodent, or human." *State v. Coauette*, 601 N.W.2d 443, 446 (Minn. App. 1999), *review denied* (Minn. Dec. 14, 1999). Loss of a tooth or an eye is considered great bodily harm. *State v. Bridgeforth*, 357 N.W.2d 393, 394 (Minn. App. 1984) (loss of tooth); *State v. Hysell*, 449 N.W.2d 741 (Minn. App. 1990) (loss of eye). BB pellets, due to the force with which they strike an object can cause loss of a tooth or an eye. Therefore, a BB gun is capable of producing great bodily harm.

Further, even an unloaded firearm has the apparent ability to inflict injury and the same capacity to create fear as one that is loaded. *LaMere v. State*, 278 N.W.2d 552, 556 (Minn. 1979). Although a BB gun is not considered a firearm, *State v. Haywood*, 886 N.W.2d 485 (Minn. 2016), analogizing to *LaMere*, whether the device appellant pointed at C.P. was loaded or operable at the time of the assault would not have affected appellant's ability to cause fear in C.P., so long as the device appeared to have the ability to inflict great bodily harm.

Here, K.P. testified that he saw appellant point a BB gun at C.P. S.N. testified that she saw a BB gun, pellet gun, or a "real gun." Further, B.W. testified that appellant pointed either a BB gun or .22 at C.P., and that he was "a hundred percent honest" that what he saw was a "gun." Thus, the state presented sufficient evidence to prove that appellant pointed a device capable of causing death or great bodily harm at C.P. because a BB gun has the ability to pierce and harm humans, which could reasonably result in the loss of a bodily member.

6

**B.** **The state presented sufficient evidence to prove that the manner in which appellant used or intended to use the device he pointed at C.P. was calculated or likely to produce death or great bodily harm.**

Next, appellant argues that the state did not prove that he used the BB gun in a manner likely to cause death or great bodily harm because appellant did not swing the BB gun at C.P. or pull the trigger, and the state did not show "that the BB gun was loaded, operable, or dangerous." We are not persuaded.

In addition to the definition provided above, a dangerous weapon can be "anything else that, in the manner it is used or intended to be used, is known to be capable of producing death or great bodily harm." CRIMJIG 13.10; *see also* Minn. Stat. § 609.02, subd. 6. Accordingly, ordinary objects can become dangerous weapons based on the manner in which they are used. *Coauette*, 601 N.W.2d at 447; *State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997); *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983). In Minnesota, a fist or foot may be a dangerous weapon. *Basting*, 572 N.W.2d at 284. Further, for a conviction under Minn. Stat. § 609.222, subd. 1, the dangerous weapon need not have caused actual injury to the victim. *Id.* at 285; *State v. Foreman*, 680 N.W.2d 536, 537 (Minn. 2004) (upholding second-degree assault conviction where Foreman pointed rifle at wife's head and threatened to kill her).

Where, as here, the evidence is principally testimonial, the outcome of the case depends on who and what the jury believed. *State v. Bakken*, 604 N.W.2d 106, 111 (Minn. App. 2000), *review denied* (Minn. Feb. 24, 2000). Although the fact that the state did not produce the device appellant used to assault C.P. could affect the weight the jury gives to the testimony, "[i]nconsistencies in testimony and conflicts in evidence do not

7

automatically render the testimony and evidence false and are not bases for reversal." *Id.* (citing *State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn. 1983)). It is the jury's responsibility to resolve any inconsistencies in testimony or conflicts in evidence. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). Further, requiring the state to prove that the unrecovered device was loaded and operable at the time of the assault would create "great difficulties . . . because of the difficulty of producing any direct evidence that the gun used was in fact loaded" and operable. *See id.*

Here, although C.P. denied seeing a BB gun, S.N., B.W., and K.P. collectively testified that appellant pointed either a BB gun, .22, pellet gun, or "real gun" at C.P. B.W. also testified that appellant was holding the device up at his shoulder in the way a rifle is held. Therefore, because we view the evidence in the light most favorable to the verdict, sufficient evidence exists to support the jury's finding that the manner in which appellant used or intended to use the device was known to be capable of producing death or great bodily harm.

**Affirmed.**