STATE of Minnesota, Respondent,

v.

Ronald Vincent JOHNSON, Appellant.

No. 81–249.

Supreme Court of Minnesota.

July 23, 1982.

C. Paul Jones, Public Defender, and Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Kenneth W. Saffold, Sp. Asst. Attys. Gen., St. Paul, Stephen Rathke, County Atty., Brainerd, for respondent.

WAHL, Justice.

Defendant, who was 18 at the time, was charged in Crow Wing County District Court with two counts of attempted murder in the first degree and one count of knowingly receiving or concealing stolen property. Minn.Stat. §§ 609.17, 609.185(1), and 609.53, subd. 1 (1980). A district court jury found him guilty of assault in the second degree, attempted murder in the second degree, and knowingly receiving or concealing stolen property. Minn.Stat. §§ 609.17, 609.19, 609.222, and 609.53, subd. 1 (1980). The trial court sentenced defendant to the presumptive term of 91 months in prison, which is the sum of the consecutive terms of 70 months for the attempted murder conviction and 21 months for the assault conviction, and a concurrent term of 15 months for the receiving or concealing conviction. On this appeal from judgment of conviction defendant contends that (1) we should grant him a new trial on the ground that the trial court erred in admitting other-crime evidence or (2) we should reduce the conviction for attempted murder to one for assault in the second degree on the ground that the state failed to prove intent to kill or (3) we should reduce his prison sentence from 70 months for the attempted murder conviction to 54 months because, as a result of a mistake by the Sentencing Guidelines Commission, if he had been convicted of attempted first-degree murder instead of attempted second-degree murder the presumptive sentence would have been only 54 months. We affirm the convictions but reduce defendant's sentence.

At around 2 a.m. on Saturday, June 21, 1980, defendant and three companions were observed by the Chief of Police in Emily as they illegally discharged fireworks on a logging road that intersects with Highway 6, which is the road that leads from Emily to Minneapolis. When the chief of police approached the four, one of them, Clifford Howard, ran into the woods and the other three got in their van and took off down the logging road, with one of the men firing a shotgun out the rear window at the chief, causing damage to the front end of the chief's car. A short time later the van came out of the woods on the same road and the person in the rear of the van fired more shots, with the pellets from one of the shots hitting the chief in the head without seriously injuring him. It was for this act that defendant was found guilty of assault in the second degree (assault with a dangerous weapon).

A chase then ensued south through a roadblock into Crosby, then west to Ironton. At Ironton someone in the rear of the van fired shots again, one of which shattered the windshield of a pursuing officer's car. It was for this act that defendant was found guilty of attempted second-degree murder. After leaving Ironton, the van turned onto a shortcut road going east toward Deerwood, which is south of Crosby on Highway 6. As the van approached Deerwood, it turned onto a different road in order to avoid a second roadblock and the three then abandoned the vehicle.

Two of the three, George Elliott and Carol Van Wert, were immediately apprehended. Defendant was apprehended later that morning.

Elliott, who pleaded guilty in Crow Wing County District Court to two counts of second-degree assault and one count of receiving and concealing stolen property and

was sentenced to 81 months in prison, testified at defendant's trial that he was driving the van and that defendant was the one who fired the shots at the chief of police and at the pursuing officers. There was other evidence corroborating Elliott's testimony that he, not defendant, was the driver of the van.

1. Defendant's first contention, that the trial court erroneously admitted other-crime evidence, relates to the admission of evidence that at 12:15 a. m., less than 2 hours before the chase began, defendant participated with Elliott and Howard in robbing a man who had been drinking too much and had stopped his car to "sleep it off" on a side road in Cass County near Brevik, which is northwest of Emily. Defendant argues that the evidence should have been suppressed because (a) he did not receive adequate pretrial notice of the state's intent to use this evidence, (b) the state failed to establish his participation in the robbery by clear and convincing evidence, and (c) the potential of this evidence for unfair prejudice outweighed its limited probative value.

Minn.R.Crim.P. 7.02 specifically provides that the so-called *Spreigl* notice of intent to use other-crime evidence "need not include offenses for which [defendant] has been previously prosecuted or those that may be offered in rebuttal of the defendant's character witnesses or as part of the occurrence or episode out of which the offense charged against defendant arose." As stated in *State v. Schweppe*, 306 Minn. 395, 404, 237 N.W.2d 609, 616 (1975), "The purpose underlying the *Spreigl* notice procedure is to ensure that a defendant is not forced to defend himself against unexpected testimony of prior offenses." And as stated in *State v. Arndt*, 264 N.W.2d 637, 638 (Minn. 1978), the rationale for the exception for previously prosecuted crimes is that "normally one can presume that the defense will not be surprised at trial if the state offers evidence of a relevant crime for which the defendant has already been prosecuted." The same rationale supports the exception for other offenses committed as part of the same occurrence or episode.

Notwithstanding the exception, the state still must give advance notice of its intent to introduce such evidence if the defendant requests discovery pursuant to Rule 9. *State v. Arndt*, 264 N.W.2d 637 (Minn.1978).

Defendant did request disclosure pursuant to Rule 9. He contends that if he had had specific notice he would have been able to secure the testimony of Howard to rebut the testimony of Elliott and the victim that defendant participated in the robbery.

The difficulty with this argument is that defendant clearly had actual notice that the state intended to offer evidence of the robbery. Defendant had been charged in Cass County with the robbery. Defendant therefore should have known that the state would try to produce evidence of the robbery at the trial in Crow Wing County. In any event, at the supplemental omnibus hearing held on September 24, shortly before trial, the defendant clearly learned about the state's intent to offer the evidence in question. Since the trial was not completed until October 1 and since Howard was presumably in custody (he pleaded guilty on September 15), the defense still had adequate time to secure his attendance at trial to testify on defendant's behalf that defendant remained in the van during the robbery.

In conclusion, even assuming that the state should have given formal notice in response to the request for discovery, defendant has not shown that any prejudice resulted from the lack of formal notice. *State v. Arndt*, 264 N.W.2d 637 (Minn.1978).

Defendant's claim that the state failed to establish his participation in the robbery by clear and convincing evidence is without merit, given Elliott's trial testimony and the testimony of the victim, who identified defendant from a display of twelve pictures, the fairness of which defendant does not challenge on appeal.[1]

---

1. Notwithstanding the clear and convincing evidence, the state probably would not have been

able to use the evidence in this trial if the trial

■ The relevance of the evidence was clear. The fact of the robbery, which occurred just 90 minutes before the Emily Chief of Police approached the van and which involved a person who could identify them, gave defendant and the others a ground to suspect that the chief was possibly approaching them for reasons unrelated to the shooting off of the firecrackers. In other words, the evidence of the robbery helped establish a motive for defendant acting as the state contended he did. Further, the fact that defendant was identified as one of the three robbers helped place him in the van and, when combined with the evidence that Elliott was the driver and Howard was not in the van during the chase, helped establish that defendant was the one who fired all the shots. The probative value of this evidence outweighs its potential for prejudice under the facts and circumstances of this case.

■ 2. Defendant's contention that the evidence was legally insufficient to establish intent to kill is without merit. Even though in retrospect it appears that some of the shot defendant was using was not powerful enough to penetrate the windshield and kill the officer at whom the shot was fired, there is nothing to suggest that defendant was aware of this. The evidence that defendant was trying to hit the officer was sufficient in our opinion to form the basis of a finding by the jury that he fired the gun with intent to kill.

3. Defendant's final contention is that the trial court erred in refusing to impose a 54-month prison sentence for the attempt conviction rather than the 70-month term.

The 70-month term is the presumptive term established by the Sentencing Guidelines Commission for attempted second-degree murder by one with defendant's criminal history score (one). This term is computed by finding the appropriate cell for second-degree murder by one with that criminal history score, here 140 months, and dividing by two. Minnesota Sentencing Guidelines and Commentary, II.G. and IV (1981).

Defendant's argument is based on the fact that when he committed the offense, the Guidelines specified that attempted first-degree murder was a severity level VIII offense, meaning that the presumptive term for attempted first-degree murder by one with a criminal history score of one was 54 months, in other words, less than that for attempted second-degree murder. This apparently resulted from a mistake on the part of the drafters of the Guidelines and was corrected on October 30, 1980. As amended, the Guidelines now provide for a presumptive term of 84 months, not 54 months, for attempted first-degree murder by one with a criminal history score of one.

It appears that there were at least three people convicted of having attempted first-degree murder after April 30, 1980, and before October 30, 1980, and that each of these received the benefit of the Commission's mistake. The validity of those sentences is not before us in this case.

■ Without implying that the trial court erred in sentencing defendant to the presumptive sentence established by the Sentencing Guidelines for attempted second-degree murder, we believe that in the interests of justice defendant should not be given a 70-month term for second-degree murder when other defendants who have been convicted of committing attempted first-degree murder in the same time period received lesser sentences as a result of the mistake in the Sentencing Guidelines. Accordingly, we reduce defendant's sentence for attempted second-degree murder from 70 months to 54 months.

Convictions affirmed; sentence reduced.

had come after the Cass County robbery trial, where defendant was acquitted. *State v. Wakefield*, 278 N.W.2d 307 (Minn.1979). However, this trial preceded the trial that resulted in the acquittal.