STATE of Minnesota, Respondent,

v.

Lance JINKERSON, Appellant.

No. C8–90–1964.

Court of Appeals of Minnesota.

May 14, 1991.

Review Denied July 24, 1991.

724

Hubert H. Humphrey, III, Atty. Gen., Steven H. Alpert, Sp. Asst. Atty. Gen., St. Paul, Ross E. Arneson, Blue Earth County Atty., Mankato, for respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and FORSBERG and AMUNDSON, JJ.

OPINION

FORSBERG, Judge.

This is an appeal from a conviction and sentence. Appellant argues that the evidence was insufficient to support his conviction for conspiracy to possess more than 10 grams of cocaine because it was based solely on uncorroborated accomplice testimony. Appellant also argues that his sentence was based on sentencing guidelines that are unconstitutional because they violate equal protection. We affirm.

FACTS

On October 7, 1989, appellant and two accomplices purchased an ounce of cocaine in a parking lot in Mankato. The seller was an undercover police officer, and the three were arrested a few blocks from the sale. The officer was wired and the conversations leading up to and including the sale were recorded; in addition, the meeting and sale were videotaped. At trial, appellant admitted that he contributed $400 toward the purchase, that he was in the car involved in the transaction, and that he was interested in buying "dope." However, appellant testified that before and during the transaction, he meant marijuana when he used the term "dope," and that he did not know that the three were purchasing cocaine until after the purchase and just before he was arrested.

The undercover officer's testimony was consistent with the audio and videotapes that were also played for the jury. The officer testified that he was called by Black, one of the accomplices, late in the afternoon of October 7. Black said she was "looking." The officer knew Black because he had made cocaine purchases from her before and he interpreted her use of "looking" to mean she was looking to buy cocaine. The officer arranged to meet Black, and they both drove to a parking lot 20 minutes later.

At this meeting, Black told the officer that she had some friends that were interested in buying an ounce of cocaine but that they each wanted to make one-half ounce purchases. He said he quoted her $1500 for the ounce and said he wanted to sell it all at once, not in two separate purchases. Black said she would check with her friends to see if they were still interested. She also said that they might want to come along for the purchase because of the large amount of cash involved. When the officer asked who the friends were, she identified them as appellant and Wendt, the other accomplice.

The officer testified that after this first meeting, he went back to wait for Black's call. About 30 minutes later, Black called

saying that her friends were willing to buy the ounce and had gotten their money together. They wanted to meet him at the same parking lot where he had earlier met Black.

At the second meeting, the officer's car and Black's car were parallel parked about three feet apart. The officer testified that Black was driving, that Wendt was in the front seat and appellant was in the back seat. Black got out of her car and approached him. She gave him $1500 and told him that he shouldn't leave until her friends approved the deal. She returned to her car with the bag of cocaine. When she got in the car, he saw her give the bag to Wendt, who opened it and looked at it and then showed it to appellant. The officer testified that he saw appellant lean forward, take a good look at the bag and then lean back in his seat. Then Black waved at him which was the signal for him to drive off. Except for minor differences, the trial testimony of both accomplices was consistent with that of the undercover officer's.

A jury convicted appellant of conspiring to possess at least 10 grams of cocaine, a third degree controlled substance crime. He was found not guilty of conspiracy to sell at least 10 grams of cocaine, a second degree controlled substance crime. He was sentenced to 58 months, the presumptive sentence.

## ISSUES

I. Was the evidence presented at trial sufficient to support appellant's conviction?

II. Does ranking a third degree substance abuse crime at the same severity level as a second degree substance abuse crime violate equal protection?

## ANALYSIS

### I.

When reviewing a conviction challenged on the basis of insufficient evidence, an appellate court:

must determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude the defendant

was guilty of the offense charged. * * * [The appellate court] must view the evidence in the light most favorable to the prosecution and assume the jury believed the state's witnesses and disbelieved any contrary evidence.

State v. Bias, 419 N.W.2d 480, 484 (Minn. 1988). Further, circumstantial evidence is entitled to as much weight as direct evidence as long as "the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." Id.

■■■■ Appellant challenges only one element necessary for his conviction, that he knowingly conspired to possess cocaine. Appellant argues that he intended to purchase marijuana and not cocaine. Further, appellant argues that the uncorroborated accomplice testimony the state produced was insufficient to prove that he knew he was purchasing cocaine under Minn.Stat. § 634.04.

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Minn.Stat. § 634.04 (1988). Appellant asserts that there must be corroboration on the specific point that he intended to purchase cocaine rather than marijuana. However, it is not necessary that accomplice testimony "be corroborated on every point or element of a crime. * * * Corroboration does not require the establishment of a prima facie case." State v. Lemire, 315 N.W.2d 606, 610 (Minn.1982) (citations omitted). Further, corroborative evidence is sufficient if it "restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree." State v. Houle, 257 N.W.2d 320, 324 (Minn.1977).

Here, the officer's testimony and the videotape connected appellant to the crime by placing appellant in the car and examining the cocaine. Further, appellant's own testi-

mony corroborated the accomplices' testimony in almost every aspect except on the issue of whether he intended to purchase cocaine or marijuana. Once accomplice testimony has been restored to trustworthiness by sufficient corroboration, it is a matter for the jury to determine the weight and credibility given the testimony of the witness. *Bias*, 419 N.W.2d at 484. The jury could have chosen not to believe appellant's testimony that he thought he was purchasing marijuana.

Here the testimony of the officer relating what he observed and the videotape adequately corroborate the accomplice testimony.

## II.

Appellant argues that assigning the same severity level for a third degree drug offense and a second degree drug offense violates equal protection. Appellant argues that it is irrational to assign different degrees of criminal culpability in the statutes for sale and possession of drugs, yet assign the same severity level to the different degrees in the sentencing guidelines. The applicable statutes are as follows:

Subdivision 1. **Sale crimes.** A person is guilty of controlled substance crime in the second degree if:

\* \* \* \* \* \*

(2) on one or more occasions within a 90–day period the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing a narcotic drug;

\* \* \* \* \* \*

Subd. 3. **Penalty.** (a) A person convicted under subdivision 1 or 2 may be sentenced to imprisonment for not more than 25 years or to payment of a fine of not more than $500,000, or both.

(b) If the conviction is a subsequent controlled substance conviction, a person convicted under subdivision 1 or 2 shall be sentenced to imprisonment for not less than three years nor more than 40

years or to payment of a fine of not more than $500,000, or both.

Minn.Stat. § 152.022 (Supp.1989).

Subd. 2. **Possession crimes.** A person is guilty of controlled substance crime in the third degree if:

\* \* \* \* \* \*

(2) the person unlawfully possesses one or more mixtures of a total weight of ten grams or more containing a narcotic drug;

\* \* \* \* \* \*

Subd. 3. **Penalty.** (a) A person convicted under subdivision 1 or 2 may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $250,000, or both.

(b) If the conviction is a subsequent controlled substance conviction, a person convicted under subdivision 1 or 2 shall be sentenced to imprisonment for not less than two years nor more than 30 years or to payment of a fine of not more than $250,000, or both.

Minn.Stat. § 152.023 (Supp.1989). Both crimes are assigned a severity level of VII. Minn.Sent. Guidelines V.

In support of his argument, appellant points to the differences in sentences assigned to the separate crimes in the statute. However, it is clear from the plain language of the statute that defendants could be given the same sentence for these two crimes if their sentences fell between the statutory minimums and maximums. The statutes allow for differences in fines and lengths of sentences, but they do not require that a court impose these differences.

Concerning the legislature's power to prescribe and fix punishment for crimes, the Minnesota Supreme Court stated:

The sole limitation which the equal protection clause imposes upon the legislature in the exercise of this power is that criminal statutes must not prescribe different punishments "for the same acts committed under the same circumstances by persons in like situation."

\* \* \* \* \* \*

The legislature's general discretion to selectively deal with those acts which it deems to pose the most significant societal problems is especially broad in the realm of criminal law.

*State v. Witt*, 310 Minn. 211, 215–217, 245 N.W.2d 612, 616–617 (Minn.1976) (citation omitted).

Applying the standard from *Witt*, the commission established the same severity level for all those convicted of possessing 10 or more grams of cocaine. Therefore, the severity level does not violate equal protection. *See also State v. Johnson*, 322 N.W.2d 220, 223 (Minn.1982) (interest of justice required reduction in sentence for attempted second degree murder to *the same level* as those convicted of attempted first degree murder; court did not require a lesser sentence for a lesser crime).

### DECISION

The evidence was sufficient to support appellant's conviction. Further, appellant's sentence did not violate equal protection.

Affirmed.